

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

—————————————

No. 08-25-00301-CR

—————————————

The State of Texas, Appellant

v.

Frankie Lee Hines, Appellee

---

On Appeal from the 143rd District Court
Ward County, Texas
Trial Court No. 25-08-6924-CRW

---

## CONCURRING OPINION

While I agree with the majority opinion's conclusion, my analysis differs to the degree noted below.

### I. LENGTH OF THE DELAY

Under the first *Barker* factor, I would calculate the total length of delay as 880 days rather than the 517 days calculated by the majority opinion because I see no basis for excluding the 363 days from

1

the date of the first indictment on October 26, 2022, to the date that the State sought a continuance of the first trial setting on October 24, 2023, as Hines was under indictment the entire time.

I do agree with the majority opinion that we must exclude the 193 days from the 1,073-day total based on the "gaps" between indictments. Unless the State acts in bad faith by voluntarily dismissing indictments and reindicting a defendant, the period between indictments cannot be counted in the total length of the delay. *See State v. Echols*, No. 11-19-00209-CR, 2021 WL 2174148, at *3 (Tex. App.—Eastland May 28, 2021, pet. ref'd) (mem. op., not designated for publication) (recognizing that because there was no evidence that the State dismissed the charges in bad faith, court did not count period of time between indictment dismissal and reindictment); *Santos v. State*, No. 13-15-00353-CR, 2018 WL 2252877, at *8 (Tex. App.—Corpus Christi–Edinburg May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (excluding period between indictments in determining the length of the total delay in the absence of any evidence that the State reindicted the defendant in bad faith to gain a tactical advantage in the case). Hines argues in his appellate brief that the State acted in bad faith by voluntarily dismissing indictments and reindicting him on multiple occasions, but, as the majority notes, he did not make that argument in the trial court and did not request a finding of bad faith. Moreover, as discussed below, every time the State dismissed an indictment against Hines and reindicted him, the State provided reasons for doing so, which in some instances rose to the level of official negligence, but not bad faith.[1] Accordingly, I would exclude the 193-day period between indictments and find that the total length of the delay was 880 days.

---

[1] Additionally, though the indictments alleged different offenses occurring at different times, which arguably could reset the speedy trial clock, Randy Reynolds, the District Attorney whose office handled the case, testified at the March 2025 dismissal hearing that the basic allegations in all of the indictments stemmed from the "same allegations" made by the child victims during a CAC interview and Hines was "under investigation" the entire time for child sexual abuse. As such, I see no basis for resetting the speedy trial clock each time a new indictment was filed. As the United States Supreme Court has explained, "[o]nce charges are dismissed, the speedy trial guarantee" is no longer applicable. *United States v. MacDonald*, 456 U.S. 1, 8 (1982). "At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation," and "suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.'" *Id*. at 8–9 (citing *United States v. Marion*,

2

## II. Reasons for the Delay

In viewing the reasons for the 880 days of delay, the first period of delay I would consider is the 363-day period between the first indictment and the date of the first trial setting. In determining who was at fault for this delay, a "reasonable" period of time to prepare for trial may not be counted against the State. *See Shaw v. State*, 117 S.W.3d 883, 889–90 (Tex. Crim. App. 2003); *see also State v. Vasquez*, No. 08-16-00089-CR, 2018 WL 4178462, at *6 (Tex. App.—El Paso Aug. 31, 2018, no pet.) (not designated for publication) (recognizing same). In cases of this nature involving charges of aggravated sexual assault of a child (Hines's original indictment), "Texas courts have found anywhere from three to six months to be a reasonable amount of time to prepare for trial." *Echols*, 2021 WL 2174148, at *4 (concluding that approximately seven months of trial preparation time would not be held against the State given the defendant's concession that "trial commenced in a reasonable length of time"); *Shaw*, 117 S.W.3d at 889–90 (holding that a three-month delay to prepare for trial was a reasonable length of time); *Vasquez*, 2018 WL 4178462, at *6 (holding that six months was a reasonable amount of time to prepare for a case involving sexual assault of a child); *De Los Santos v. State*, No. 05-08-01692-CR, 2010 WL 1744618, at *3 (Tex. App.—Dallas May 3, 2010, no pet.) (mem. op., not designated for publication) (holding the same as *Vasquez*)).

Here, the State does not articulate what it believes was a reasonable time to prepare for trial, but even affording the State six months or 180 days, the State was at fault for 183 days of this 363-day period.

---

404 U.S. 307, 321 (1971)). Thus, as our sister court has explained, when, as here, the State voluntarily dismisses an indictment and subsequently reindicts the defendant, "the time between the two indictments is not counted for speedy trial purposes unless the State delayed re-indicting in bad faith." *Santos v. State*, No. 13-15-00353-CR, 2018 WL 2252877, at *8–9 (Tex. App.—Corpus Christi–Edinburg May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *MacDonald*, 456 U.S. at 8; *United States v. Colombo*, 852 F.2d 19, 23 (1st Cir. 1988); *State v. Guerrero*, 110 S.W.3d 155, 159 (Tex. App.—San Antonio 2003, no pet.)). "Bad faith in the speedy trial context requires a showing that 'the State was trying to gain a tactical advantage [by delaying the] defendant's case.'" *Id*. (citing *Hopper v. State*, 520 S.W.3d 915, 928 (Tex. Crim. App. 2017)).

In addition to those 183 days, I agree with the majority opinion that the periods within the remaining 517 days of delay can be attributed to the State, for a total of a 700-day delay attributable to the State. Significantly, the State sought the October 2023 trial date continuance after the prosecuting assistant district attorney resigned, leaving the elected district attorney, Randy Reynolds, as the sole attorney in that office. Subsequently, the State voluntarily dismissed the indictment against Hines at the April 15, 2024 trial setting because it needed to conduct an additional investigation after receiving oral statements from the alleged victims the weekend before trial.[2] On the morning of the next trial setting on August 18, 2025, the State announced it was not ready to select which acts it intended to rely upon in seeking Hines's conviction, leading to the State's decision to once again voluntarily dismiss the indictment and seek a new one, which it immediately did.

Though I would count 700 days of delay against the State, I disagree with the majority opinion's conclusion that we should weigh this period heavily against the State based on "a continuing course of deliberate conduct by the State to delay the litigation until it felt comfortable in going to trial on charges it never seemed able to indict properly." We are only to weigh periods of delay heavily against the State when it has engaged in "deliberate conduct" with the "intent to harm the accused defense" or otherwise cause "prejudice to the defense." *See Zamorano v. State*, 84 S.W.3d 643, 649–50 (Tex. Crim. App. 2002) (en banc) (recognizing that a "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government"); *Hopper*, 520 S.W.3d at 928 (recognizing that "a finding of bad faith in the speedy trial context requires a showing that the State was trying to gain a tactical advantage in the defendant's case"); *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App.

---

[2] Reynolds testified that the alleged victims' statements the weekend before the April 2024 trial setting altered his view of the "timeline" of when the assaults took place, and he believed he needed to speak with the witnesses in Arkansas for clarification. Rather than immediately reindicting Hines, he chose to keep the matter "under investigation" until he could clarify the timeline and other issues in question. According to Reynolds, he was hoping to get information from the Arkansas trial, but because the State of Arkansas dismissed the matter, that proved unfruitful. In addition, shortly after Hines was reindicted in late October 2024, Reynolds lost the November 2024 election.

4

2003) (recognizing that although any delay weighs against the State if not justified, there must be evidence of a "*deliberate* attempt on the part of the State to prejudice the defense" for it to weigh heavily against the State).

Without condoning the delays, I believe the State provided explanations therefor, which the State openly admits constituted negligence on its part. I cannot go so far as to view the State's actions as constituting a deliberate attempt to prejudice Hines or hamper his case. Accordingly, I weigh this period of delay against the State, albeit not heavily. *Gonzales v. State*, 435 S.W.3d 801, 809–10 (Tex. Crim. App. 2014) (recognizing that valid reasons for delays should not weigh heavily against the State).

### III. TIMELY ASSERTION OF THE RIGHT TO SPEEDY TRIAL

I agree with the majority opinion that Hines timely asserted his right to a speedy trial, and more importantly, that he did not acquiesce in any periods of delay. Hines filed his first motion for a speedy trial on April 4, 2024, expressly to ensure that the April 15, 2024 trial date would not be continued. The State contends that this assertion of the right was not timely because Hines waited 14 months after he was reindicted on January 24, 2024, before bringing the motion, and that he did so on the eve of trial. A delay of this length in filing a motion can be a factor in determining whether a defendant timely asserted his right to a speedy trial. *See*, *e.g.*, *Kelly v. State*, 163 S.W.3d 722, 729 (Tex. Crim. App. 2005) (concluding that defendant did not timely file his motion for speedy trial where he waited a year to file the motion and trial took place approximately two months later); *see also Dragoo*, 96 S.W.3d at 314–15) (concluding that motion for a speedy trial, which was filed three-and-a-half years after defendant's arrest and on the eve of trial, was not a timely assertion of the defendant's speedy trial right). However, here, as the majority opinion notes, the uncontradicted evidence demonstrated that Hines was prepared to go to trial at the first trial setting. It was the State that was not prepared. Moreover, because the State dismissed the indictment against Hines at that time and did not reindict him until over six months later, Hines would not have been required to renew his motion to ensure that his speedy-

5

trial right was protected. *Cf. Zamorano*, 84 S.W.3d at 651–52 (weighing factor in favor of defendant, even though defendant waited two-and-a-half years after his arrest to file his speedy trial motion but announced ready at all trial dates, and later renewed his motion for speedy trial after the trial court denied his first motion, thereby indicating his desire for a trial).

I further recognize, as the State points out, that after he was reindicted, Hines did not file any additional motions for a speedy trial, and instead filed two motions to dismiss. In some instances, filing a motion to dismiss can be viewed as an indication that a defendant "desire[s] to have no trial instead of a speedy one" and therefore weakens the defendant's speedy trial claim. *See Cantu v. State*, 253 S.W.3d 273, 283 (Tex. Crim. App. 2008) ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one."). However, as this Court has recognized, it may be appropriate in some circumstances for a defendant to file a motion to dismiss rather than a motion for speedy trial, "particularly when so much time has passed that a defendant would no longer be able to effectively obtain a speedy trial, and where defense counsel may 'legitimately feel that a long delay has caused a client so much prejudice that dismissal is warranted, even if the State is belatedly ready to move promptly.'" *Gonzalez v. State*, No. 08-16-00287-CR, 2018 WL 6061274, at *11 (Tex. App.—El Paso Nov. 20, 2018, no pet.) (not designated for publication) (citing *Phillips v. State*, 650 S.W.2d 396, 401 (Tex. Crim. App. 1983) (seeking only dismissal will not necessarily result in a waiver of the speedy trial claim in all cases)). In such cases, the defendant may be justified in filing a motion to dismiss rather than a motion for a speedy trial as a "means of alerting the trial court and the State of the delay and appellant's lack of acquiescence to it, and not necessarily [as] an attempt to escape trial completely." *Id.* (citing *Zamorano*, 84 S.W.3d at 651 n. 40).

The record before us is clear that Hines initially alerted the trial court that he was seeking a speedy trial in April 2024; he appeared ready for the April 2024 trial setting; and, prepared to face a

jury, he announced ready for trial at two subsequent trial settings. This is not a case of a defendant acquiescing in the State's delays in an effort to avoid trial until his case was dismissed. Accordingly, I weigh this factor in favor of Hines, albeit slightly.

## IV. PREJUDICE TO HINES

I agree with the majority opinion that we may presume prejudice under these circumstances. Prejudice may be presumed when there is an excessive delay in a case, and courts have held that similar periods of delay, such as the almost three-year delay that occurred here, can be considered excessive. *See Dragoo*, 96 S.W.3d at 315 (concluding that a three-and-a-half-year delay between appellant's arrest and trial was "patently excessive" and, in itself, "presumptive[ly] prejudic[ial]" to appellant's defense) (citing *Zamorano*, 84 S.W.3d at 654 (four-year delay between defendant's arrest and trial was presumptively prejudicial to defense)).

Although the presumption of prejudice may be extenuated by a defendant's acquiescence in the delay, *see id.*, Hines never acquiesced in the delay; he was ready to proceed to trial at each trial setting. *See Gonzales*, 435 S.W.3d at 815 (the presumption of prejudice applied where the State failed to prove that the defendant acquiesced in the delay). And the State did not present any evidence to rebut the presumption of prejudice.

Additionally, as the majority points out, even if the presumption did not apply, Hines suffered actual prejudice, as he was under the weight of an ongoing criminal investigation for almost three years and was incarcerated for over two years and two months. Hines made uncontradicted allegations in his trial court pleadings that his "physical health deteriorated as a consequence" of the ongoing prosecution, that he "developed a heart condition, and his mental health was a constant struggle" during this time.[3] Similarly, Hines makes uncontradicted allegations of financial drain and psychological stress he

---

[3] Though he presented no evidence of such, he suggested that his medical records from the Ward County Jail would support his allegations that he suffered "health-related" issues during his incarceration.

suffered from preparing for at least two trials, both of which were cancelled on the eve of trial due to the State's admitted negligence. *See Cantu*, 253 S.W.3d at 286 & n. 69 (referring to the "draining of financial resources" as one of the "major evils protected against by the speedy trial guarantee") (citing *Marion*, 404 U.S. at 320) ("[T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused defense. . . . Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."))

I find it less clear, however, whether Hines suffered any prejudice in terms of impairment to his defense. Reynolds testified at the March 2025 dismissal hearing that after he lost the November 2024 election and a new district attorney took office, his trial notebook may not have been preserved (if there was one), but it is unclear whether this had any impact on Hines's defense.

Nevertheless, for the reasons explained above, I agree that Hines suffered prejudice.

## V. BALANCING THE *BARKER* FACTORS

Despite the differences in our analyses, I agree with the majority opinion's conclusion that upon balancing the factors, the record supports the trial court's finding that Hines's speedy-trial right was violated and that the trial court therefore did not err in dismissing the case against him with prejudice.


LISA J. SOTO, Justice


July 23, 2026

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)